UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :
UNITED STATES OF AMERICA                      :
                                              :   Docket No.: 16-CR-483 (JSR)
     -v-                                      :
                                              :
STEFAN LUMIERE,                               :
                                              :
          Defendant.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


# STEFAN LUMIERE'S MOTION IN LIMINE
# TO ADMIT EVIDENCE OF CONSCIOUSNESS OF INNOCENCE

Eric M. Creizman (EC 7684)
Melissa Madrigal (MM 4572)
CREIZMAN PLLC
565 Fifth Avenue, Fl. 7
New York, New York 10017
T: (212) 972-0200
F: (646) 200-5022
E: ecreiz@creizmanllc.com

January 6, 2016

We respectfully submit this brief memorandum in support of Stefan Lumiere's motion in limine to admit evidence of consciousness of innocence through Special Agent Callahan, the lead case agent in the investigation of this criminal case, and, if necessary, Jeffrey Udell, Mr. Lumiere's prior attorney: namely, that:

1) Law enforcement executed a search warrant on Mr. Lumiere's apartment early in the morning on February 26, 2014, recovering many electronic storage devices. The government was focused on locating recorded conversations Lumiere made while at Visium, which the government knew about through consensual recordings a cooperating witness made of Lumiere prior to the warrant.

2) Two weeks later, on March 12, 2014, Stefan's newly-retained attorney, Mr. Udell, met with the Assistant U.S. Attorneys assigned to the case, SEC counsel, and law enforcement agents, including Special Agent Callahan. Mr. Udell made a presentation to the group, attempting to persuade the prosecution team of Mr. Lumiere's innocence of participating in what the prosecution described was a mismarking scheme in the Credit Fund at Visium. The lead Assistant U.S. Attorney and the SEC told Mr. Udell that they did not agree that Mr. Lumiere was innocent.

3) On March 17, 2014, Mr. Lumiere, accompanied by Mr. Udell, met with the same group of individuals, including Special Agent Callahan. Mr. Lumiere voluntarily answered questions and told his story. Additionally, he revealed that there were recordings on other electronic storage devices that law enforcement overlooked and failed to seize during the February 26 search. At the request of the Assistant U.S. Attorney, Mr. Lumiere agreed to locate those recordings and provide them to the

prosecution team. Mr. Lumiere and his attorney were told that the prosecution team did not believe Mr. Lumiere was innocent or telling the whole truth at their meeting.

    4) On or about March 20, 2014, Mr. Udell provided law enforcement with the electronic storage devices containing the recordings that law enforcement failed to seize. It is plain from examining their contents that no review was performed by Mr. Udell or Mr. Lumiere of the contents of those electronic storage devices before providing them to the prosecution team to remove privileged communications.

    5) On or about April 15, 2014, Mr. Lumiere signed a voluntary consent form, permitting law enforcement to search the contents of the electronic storage devices.

    At a minimum, Mr. Lumiere should be able to elicit testimony from Special Agent Callahan at trial that some of the recordings the government is using as evidence in the trial were contained on electronic storage devices provided by Mr. Lumiere voluntarily, knowing that the government believed he was guilty of participating in the mismarking scheme, and knowing that he was under no subpoena or other legal obligation to do so.

    The seminal Second Circuit case on "consciousness of innocence" is *United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990), in which the court reversed a conviction, finding the district judge abused his discretion by excluding evidence that the defendant rejected an offer of immunity in return for providing information about wrongdoing by others. There, the court found that the "probative force of a rejected immunity offer is clearly strong enough to render it relevant." *Id.* At 691. Moreover, even though "there may be reasons for rejecting the offer that are consistent with guilty knowledge . . . a jury is entitled to believe that most people would jump at the chance to obtain an assurance of

immunity from prosecution and to infer from rejection of the offer that the accused lacks knowledge of the wrongdoing. That the jury might not draw the inference urged by the defendant does not strip the evidence of probative force." *Id.* at 690-691.

The *Biaggi* court relied on Wigmore's treatise on evidence:

Let the accused's whole conduct come in; and whether it tells for consciousness of guilt or for consciousness of innocence, let us take it for what it is worth . . . . Let us not deprive an innocent person, falsely accused, of the inference which common sense draws from a consciousness of innocence and its natural manifestations.
*Id.* (*citing* 2 Wigmore on Evidence Sec. 293, at 232) (J. Chadbourn rev. Ed. 1979)).

In a case where a defendant sought to admit evidence of "consciousness of innocence" under similar, albeit, far less compelling circumstances than those supporting Mr. Lumiere's motion here, Judge Buchwald denied the request. *See United States v. Grant*, 2008 WL 4579992 (S.D.N.Y. Oct. 14, 2008). In *Grant*, the defendant's business partner was already indicted and charged in a criminal case, and the SEC had subpoenaed the defendant's civil attorneys for documents. The defendant provided his attorneys with incriminating notes that were responsive to the subpoena, which those attorneys handed over to the SEC pursuant to the subpoena. Judge Buchwald rejected Grant's motion in limine to admit evidence of this production as "consciousness of innocence" because production of the notes was compelled by law and the "defendant had no choice" to produce the notes and their production was subject to several competing explanations consistent with consciousness of guilt. *Id.* at 4. Nevertheless, Judge Buchwald said that she was "reluctant to preclude [Grant's counsel] at least on summation from arguing from the evidence at trial that certain inferences can be drawn from that and one inference

3

would be that someone who thought he was guilty wouldn't have acted this way.  My assumption was that they would argue something like that on their summation and the government would then have facts or be able to argue the contrary inferences." *Id.* at 5. Indeed, although the defendant did not testify, Judge Buchwald permitted defense counsel, based on evidence adduced through testimony at trial, that the jury could infer consciousness of innocence from handing over those notes to the SEC. *Id.* at *7:

"That means if Mr. Grant didn't believe he was engaged in a fraud, if he didn't believe he was committing a crime, then he wasn't.  And who on earth, who realizes that he is engaged in a massive fraud, fraud punishable by life in a federal prison . . . And if Tone Grant were guilty of what the government says he is and his partner in crime were just arrested and charged with those crimes, what would Mr. Grant have done?  Go to his files, make sure any incriminating documents were destroyed? . . . . What does he do?  He preserves his documents.  And then when the federal government, the same government that is prosecuting Phil Bennett, asks for them, he produces them."

On appeal of Grant's conviction, the Second Circuit denied Grant's challenge to the district court's denial of his motion in limine, reasoning that the "consciousness of innocence" evidence Grant had to offer "lacks the obvious force that made the evidence in *Biaggi* both highly relevant and highly probative." *United States v. Grant*, 338 F. App'x 19, 21 (2d Cir. 2009) (summary order).  Moreover, the Second Circuit noted that "the defendant was able to offer this evidence [of "consciousness of innocence"] . . . at trial." *Id.*

Concededly, while Lumiere's proffered consciousness of innocence evidence may not be quite as probative as the evidence in *Biaggi*, it is far more probative than the

4

evidence sought to be introduced and worthy of the jury's consideration.  Here, Lumiere was told by his lawyer, after his lawyer made a presentation, that the government did not believe him.  Lumiere nevertheless voluntarily met with the same group of prosecutors anyway, after being warned of the consequences of "lying" to them and of the extremely limited (maybe, dubious) "protections" provided by a proffer agreement.  And Lumiere knowingly and voluntarily identified and handed over electronic storage devices that contained recordings that were relevant to the conduct under investigation, and consented to their search.  Although Lumiere's conduct in this regard is certainly open to different interpretations, defense counsel should have the opportunity to argue to the jury that his voluntary production of these materials reflect a consciousness of innocence.

   The hearsay rule is not implicated by the introduction of such non-verbal conduct unless the declarant then intended the non-verbal conduct as an assertion, which the defense is now trying to introduce for its truth.  That is not the case here.  Here, the non-verbal conduct of Mr. Lumiere then voluntarily providing the electronic storage devices to the government is merely intended to provide circumstantial evidence to the jury of a fact: that Mr. Lumiere believed at that time he was innocent of the alleged offense. *See, e.g., Wilson v. Clancy*, 747 F. Supp. 1154, 1158 (D. Md. 1990) ("It appears to be the intent of the limitation of the hearsay definition under Fed. R. Evid. 801(a)(2) to non-verbal conduct 'intended by the [declarant] as an assertion' to do away with the notion that 'implied assertions' are within the hearsay prohibition.").

   Lumiere's conduct in meeting the government after he knew they did not believe him, telling his story even though he knew they believed it was a lie, and producing recordings, even though the government had overlooked them in a search and he was not

5

under a legal compulsion at the time to provide them, was not then intended as a "communicative" act, but were merely nonassertive conduct. *Cf.* That is not the case here. Here, the non-verbal conduct of Mr. Lumiere then voluntarily providing the electronic storage devices to the government is merely intended to provide circumstantial evidence to the jury of a fact: that Mr. Lumiere believed at that time he was innocent of the alleged offense. *See, e.g., United States v. Brock*, 667 F.2d 1311, 1315 n.2 (9th Cir 1982) ("The parties address the admissibility of the testimony of Bernard's attempts to evade DEA surveillance as a question of whether such acts were coconspirator statements not within the definition of hearsay under Rule 801(d)(2)(E). Such testimony concerned 'nonverbal conduct' and, consequently, is a 'statement' within the hearsay rules 'only if it [was] intended by him as an assertion.' . . . The evasive attempts cannot be said to have been intended as 'communicative' acts; instead they were merely nonassertive conduct, which is not hearsay."); *United States v. Campbell*, 507 Fed. Appx. 150 (3d Cir. 2012) (affirming district court's ruling allowing witness to testify that when the father of the defendant heard that son was involved in a fraud, he was angry and in shock, because father's nonverbal conduct was not intended an "assertion" within the meaning of the hearsay rule). The Eighth Circuit in *United States v. Singer*, 687 F.2d 1135, 1147 (8th Cir. 1982), provides a pertinent analysis here. In *Singer*, the question at issue was whether a letter that is introduced as circumstantial evidence of a view believed by and acted on by the writer was hearsay:

> "The district court admitted into evidence an envelope addressed to Sazenski and 'Carlos Almaden,' 600 Wilshire, containing notice to terminate their tenancy. It was introduced to show that 'Carlos Almaden' lived with Sazenski. We reject Sazenski's

6

contention that this letter was hearsay. . . .  If this letter were submitted to assert the implied truth of its *written contents*—that Carlos Almaden lived at 600 Wilshire—it would be hearsay and inadmissible.  It is, however, admissible nonhearsay because its purpose is to imply from the landlord's *behavior*—his mailing a letter to 'Carlos Almaden,' 600 Wilshire—that 'Almaden" lived there."

Lumiere is seeking to admit the "consciousness of innocence" evidence, that he voluntarily that he voluntarily provided the government with recorded conversations, notwithstanding his knowledge that the government neither believed in his innocence nor his story.  This evidence is to prove that he believed in his innocence, not for the truth of the contents of the electronic storage devices or anything he tried to convey to the government in producing the recordings.

## CONCLUSION

For these reasons, we respectfully request that the Court permit Mr. Lumiere to admit evidence of consciousness of innocence, and at a minimum, his voluntary production of the electronic storage devices.

                                              Respectfully submitted,

                                              /s/ Eric M. Creizman
                                              Eric Creizman (EC-7684)
                                              Creizman PLLC
                                              565 Fifth Avenue, Fl. 7
                                              New York, New York 10017

Dated:       January 7, 2017
              New York, New York